UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 23 CR 253 |
| v. | ) | |
| | ) | Hon. Joan H. Lefkow |
| STANISLAV SANNIKOV, | ) | |
| aka "Steve Sannikov" | ) | |

## PLEA DECLARATION

The defendant, STANISLAV SANNIKOV, after consultation with his attorney, Mary H. Judge, acknowledges and states the following:

1. The information in this case charges Mr. Sannikov with wire fraud, in violation of Title 18, United States Code, Section 1343.

2. Mr. Sannikov has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

3. Mr. Sannikov fully understands the nature and elements of the crime with which he has been charged.

4. Mr. Sannikov will enter a voluntary plea of guilty to the information in this case. In addition, Mr. Sannikov agrees to the entry of a forfeiture judgment.

## FACTUAL BASIS

5. Mr. Sannikov will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, he admits the following facts and that those facts establish his guilt beyond a reasonable doubt and establish a basis for forfeiture.

1

6. Beginning in or around 2016 and continuing through in or around 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, Mr. Sannikov, knowingly devised, intended to devise, and participated in a scheme to defraud investors in real property, and to obtain money from those investors by means of materially false and fraudulent pretenses, representations, and promises, and on or about March 26, 2019, Mr. Sannikov executed the scheme by knowingly causing to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate wire transmission of approximately $100,000 from Victim C's account at Tennessee Bank & Trust to a bank account in the name of Chestnut Realty Group at JP Morgan Chase Bank, through the Federal Reserve System, in violation of Title 18, United States Code, Section 1343.

Specifically, beginning in or around 2016 and continuing through 2020, Mr. Sannikov was a real estate broker engaged in a scheme to defraud real estate investors, by purporting to broker their purchase or lease of certain real properties and by inducing the investors to deposit money intended for the purchase or lease of those properties into bank accounts that he controlled. Mr. Sannikov falsely and fraudulently represented to these investors that the properties were available for purchase or lease and that the bank accounts were escrow accounts, controlled by legitimate escrow companies, which would hold their money in escrow toward the purchase of those properties. In fact, as Mr. Sannikov knew, the properties were not available for purchase or lease and the accounts holding the investors' money were not escrow accounts controlled by legitimate escrow companies, but bank accounts

2

controlled by Mr. Sannikov. Mr. Sannikov used the money that investors deposited into those accounts not to purchase or lease real estate, but for his personal use and benefit and to continue the scheme.

On March 13, 2019, Mr. Sannikov sent an email to Victim C representing that a property in the Pilsen neighborhood of Chicago, Illinois, was for sale for approximately $2,400,000. Mr. Sannikov represented to Victim C that to conduct this transaction, Victim C had to deposit $100,000 in earnest money. Mr. Sannikov represented that the $100,000 deposit would be held in escrow. On or about March 22, 2019, Mr. Sannikov provided Victim C with an escrow agreement and instructions for wiring the deposit to "Chestnut Realty Group Escrow" when he knew that Chestnut Realty Group had no escrow account and that the account was his personal business account.

On or about March 26, 2019, Victim C deposited approximately $100,000 into the Chestnut Realty Group bank account toward the purchase of the Pilsen Property. Mr. Sannikov acknowledges that this deposit was accomplished through a wire transfer from Victim C's account to the Chestnut Realty Group bank account, and that the wire transfer traveled in interstate commerce. After this transfer, he did not use the money to purchase the Pilsen Property as Victim C intended but used the money for his personal use and benefit and to continue the scheme.

\*   \*   \*

In total, Mr. Sannikov admits that he caused real estate investors, to suffer $3,021,481 in losses because of his investment property scheme.

3

## Maximum Statutory Penalties

7.   Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a.   A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b.   Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

    c.   Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8.   Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, and other sentencing factors under 18 U.S.C. § 3553(a), including the need to provide restitution to any victim of the offense. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the 2023 Guidelines Manual.

    a.   **Offense Level Calculations.**

        i.   The base offense level is 7, pursuant to Guideline

4

§2B1.1(a)(1).

    ii.  The base offense level is increased by 16 levels, pursuant to Guideline §2B1.1(b)(1)(I), because the offense and relevant conduct resulted in loss of at least $3,021,481, which is greater than $1,500,000 but not more than $3,500,000.

    iii.  Mr. Sannikov anticipates the Court will determine at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of responsibility for his criminal conduct within the meaning of Guideline §3E1.1(a), resulting in a two-level reduction in the offense level.

    iv.  If the Court determines that Mr. Sannikov has fully accepted responsibility within the meaning of Guideline §3E1.1(a), and that the offense level is 16 or higher prior to the application of any reduction for acceptance of responsibility pursuant to §3E1.1(a), he anticipates that the government will move for an additional one-level reduction pursuant to Guideline §3E1.1(b) because defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

\*\*Mr. Sannikov meets the criteria set forth in Guidelines §4C1.1(a) and therefore the offense level is decreased by two levels.

  b.  **Criminal History Category.** Mr. Sannikov's criminal history points equal zero and therefore his criminal history category is I.

c. **Sentencing Guidelines Range.**

The resulting offense level is 18, which, when combined with a criminal history category of I, results in an advisory guidelines range of 27 to 33 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

9. Mr. Sannikov understands that the Court will determine the Guideline calculation at the sentencing, and if it differs from the calculations herein, Mr. Sannikov will have no right to withdraw his guilty plea.

10. Regarding restitution, Mr. Sannikov acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order restitution to the Victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

11. Mr. Sannikov agrees to pay the special assessment of $100.

## Forfeiture

12. Mr. Sannikov understands that by pleading guilty, he will be subject to forfeiture to the United States any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from the violation of 18 U.S.C. § 1343 (wire fraud).

## Waiver of Rights

13. Mr. Sannikov understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment.

    b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that

7

defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

   iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

   vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

8

14. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

## CONCLUSION

15. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

16. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of

limitations between the signing of this Agreement and the commencement of such prosecutions.

17. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

18. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

19. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John Murphy
Executive Director

By: _____
Mary H. Judge

_____
Stanislav Sannikov

Date: March 11, 2024

10