**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Case No. 23 CR 253-1** |
| v. | ) | |
| | ) | **Hon. Joan H. Lefkow** |
| | ) | |
| **STANISLAV SANNIKOV** | ) | |

## DEFENDANT SANNIKOV'S RESTITUTION ARGUMENT

Defendant STANISLAV SANNIKOV, by and through the Federal Defender Program and its attorney, MARY H. JUDGE, respectfully moves this Honorable Court to reduce and/or offset the order of restitution, pursuant to 18 U.S.C. § 3664(j)(2). In support thereof, Mr. Sannikov provides as follows:

### Background

On January 17, 2025, the Government amended its requested restitution amount from $3,021,481 to $2,248,467. Dkt. No. 35. This Court heard restitution arguments at the sentencing on February 5, 2025, but did not enter an order of restitution at that time. The Court allowed the parties to file their respective written arguments. Mr. Sannikov is foregoing any arguments regarding payments made to third parties at this time but may raise the issue in the future.

Therefore, there are only two outstanding issues regarding restitution that need to be resolved. The first is whether a $16,000 wire transfer made by Mr. Sannikov directly to Mr. Will *after the fraud was discovered* should result in a

restitution reduction of $16,000. It should. The second is whether the restitution owed to Vladimir Melamed should be reduced by $256,000 because of: (A) $101,000 recovered by Melamed from an order of forfeiture of Mr. Sannikov's property in the matter corresponding to case number 22CH11806; and (B) $155,000 recovered in compensatory damages for the same loss at issue here, in the matter corresponding to case number 17CH14148. (Both lawsuits attached under separate cover as Exh. C and D). Absent this offset, victims Will and Melamed would be able to recover more than their actual losses, contrary to the purpose of the Mandatory Victim Restitution Act ("MVRA") and Seventh Circuit precedent. *United States v. Griffin*, 76 F. 4th 724, 749 (7th Cir. 2023) ("[T]he primary and overarching purpose of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." (internal quotation marks omitted) (quoting *United States v. Robers*, 698 F.3d 937, 943 (7th Cir. 2012)). *See also United States v. Braslawsky*, 951 F.2d 149, 151 (7th Cir. 1991) ("By ordering payment of a restitution amount greater than the damages from the crime of conviction… the district court exceeded its statutory sentencing authority."); *and United States v. Wolf,* 90 F.3d 191, 194 n. 2 (7th Cir.1996) ("[T]his court definitively has held that an order of restitution that exceeds the victim's actual losses or damages is an illegal sentence." (internal citation omitted)).

## DISCUSSION

### I. Pursuant to 18 U.S.C. § 3664(j)(2), the Payments Made to Victims Will and Melamed Should Offset Mr. Sannikov's Restitution Order

Section 3664(j)(2)(B) provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in any State civil proceeding." 18 U.S.C. § 3664(j)(2)(B). To the extent that victims Will and Mr. Melamed have been at least partially compensated for their losses incurred in this case, this Court should reduce Mr. Sannikov's order of restitution accordingly.

Contrary to the Government's assertion that this Court does not have the power to credit prior compensatory damages paid to victims, Seventh Circuit precedent is clear that Section 3664(j)(2) requires such offsets. In support of its assertion that this Court is unable to "credit prior payment to a victim," the Government relies almost entirely on authorities from different jurisdictions that are not binding in the Seventh Circuit. Of these, the Government relies most heavily on *United States v. Banks*, a 2014 decision from the District of Columbia District Court. 62 F. Supp. 3d 125 (D.D.C. 2014). The quoted sections of *Banks*, however, are inapposite to Seventh Circuit practice and precedent. The Seventh Circuit is very clear on this question: "Any amount the victim has received from the defendant in a civil suit as of the time of sentencing… *must* be used to reduce the restitution amount to prevent double recovery by the victim." *United States v. Malone*, 747 F. 3d 481, 485 (7th Cir. 2014) (emphasis added). *See also United States v. Swanson*, 394 F. 3d 520, 528 (7th Cir. 2005) ("[T]he restitution statute requires

the court to deduct the value of any part of the property that has been returned." (citing 18 U.S.C. § 3663A (b)(1)(B)(i)(II)); ("[I]t seems appropriate for the district court to either clarify its reasoning for the amount of restitution chosen or to recalculate the amount of restitution… verifying the value of loss to the companies… *and subtracting the value of any funds or property returned*." (emphasis added)).

**A. Because Mr. Sannikov wired Mr. Will $16,000 after the discovery of the fraud, this amount should be offset from the restitution owed to Mr. Will.**

The restitution Mr. Sannikov owes Adam Will should be reduced by $16,000. According to the Government's restitution chart, Mr. Will learned of the fraud against him on February 1, 2020. (Attached under separate cover, at Exh. A, page 2) (entry reads: "Approximate date based on AW interview/AW emails"). On November 17, 2021, Mr. Sannikov wired $16,000 directly from a bank account in his name to an account in Mr. Will's name. (See attached under separate cover, at Exh. B) (entry reads: "11/17 Domestic Wire Transfer Via: Fourth Capital Bk/064009474 A/C: Adam Will lmad: 1117B1Qgc08C028024 Trn: 3350761321Es"). This wire transfer occurred 21 months after Mr. Will's discovery of the fraud. There is no reason for Mr. Will to expect a repayment from Mr. Sannikov, except because of the fraud. Therefore, Mr. Sannikov has met his burden of establishing a basis for the $16,000 reduction. The Government's mere assertion otherwise is insufficient to challenge the evidence presented in the form of a bank record from Chase Bank.

**B. Because Mr. Melamed received $101,000 from the foreclosure of Mr. Sannikov's property in addition to $155,000 from Mr. Sannikov's co-defendants, the restitution owed to Mr. Melamed should be offset by $256,000.**

The restitution Mr. Sannikov owes to Vladimir Melamed should be reduced by $101,000 due to a payment resulting from the foreclosure of Mr. Sannikov's property. On July 8, 2024, a real estate property belonging to Mr. Sannikov (to wit, 3264 Carriageway, Unit 2404, Arlington Heights, IL 60004) was sold to the highest bidder for a sum of $101,000, pursuant to a judgment of foreclosure in the matter corresponding to case number 22CH11806. (See attached under separate cover, at Exh. C). Because Mr. Melamed received the funds resulting from this court-ordered foreclosure, Mr. Sannikov's obligation of restitution to Mr. Melamed should be reduced commensurately. Mr. Sannikov has met his burden of establishing a basis for the $101,000 reduction. The foreclosure order is a matter of public record in the Cook County chancery court. *See generally* Exh. C. The Government offers no evidence to the contrary.

The restitution owed to Mr. Melamed should be further reduced by $155,000 due to payments made by Mr. Sannikov's co-defendants in a civil matter. In response to Mr. Sannikov's subpoena, Mr. Melamed's attorney provided the government with settlement records from a lawsuit he filed against Mr. Sannikov and other co-defendants. Mr. Melamed received $155,000 from a settlement involving Mr. Sannikov's co-defendants, Denis Bremel and Alex Loyfman, in the matter corresponding to case number 17CH14148. (See attached under separate cover, at Exh. D). The 2017 case involved the same properties as those at issue here:

Parkside, May, Cleveland, 170 Bruton, and 168 Bruton. Exh D, pgs. 3-15. As such, the 2017 payments to Mr. Melamed arise from the "same loss" at issue here. *See* 18 U.S.C. § 3664(j)(2)(B). Because victims are not entitled to double recovery, Mr. Sannikov should not be compelled to pay Mr. Melamed for any financial loss he has already recovered. *See Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 639 (7th Cir. 2011) ("In Illinois, as elsewhere, a plaintiff may 'receive only one full compensation for his or her injuries, and double recovery for the same injury is not allowed.'" (quoting *Thornton v. Garcini,* 237 Ill. 2d 100, 111 (2010)). *See also United States v. Johnson*, 911 F. 3d 849, 852 (7th Cir. 2018).

The Seventh Circuit decision in *United States v. Dawson*, 250 F. 3d 1048 (7th Cir. 2001), is instructive here. In *Dawson*, the defendant appealed her fraud restitution amount based on *possible* restitution payments by her co-schemers. *Id.* at 1050. The Seventh Circuit denied her appeal based on the fact that the Government contended it had "no intention of seeking restitution from any of [the co-schemers]." *Id.* at 1051. However, the Court noted that "were [the defendant's] co-schemers to pay [the victim] any amounts in restitution, [it would] expect that the government would notify [the defendant] of that occurrence so that she could properly file a request for modification of restitution." *Id.* Here, there is no dispute that Mr. Melamed received $155,000 from Mr. Loyfman and Mr. Bremel. *See generally* Exh. D. Accordingly, the ultimate holding in *Dawson* is inapplicable. To the contrary, based on the *Dawson* Court's reasoning, it is clear that the restitution Mr. Sannikov owes Mr. Melamed should be reduced by the amount paid to Mr.

Melamed in connection to case number 17 CH 14148. Combined with the foreclosure payment, this results in a total offset of $256,000.

## II. A Failure to Offset the Restitution Owed to Mr. Will and Mr. Melamed Would Result in an Illegal Sentence

If this Court did not offset Mr. Sannikov's restitution order under Section 3664(j)(2), it would allow Mr. Will and Mr. Melamed to recover in excess of their actual losses, resulting in an illegal sentence. The Seventh Circuit's practice of offsetting restitution by the amount already recovered is in keeping with the purpose of the Mandatory Victim Restitution Act ("MVRA"), which is "to make victims of crime whole." *Griffin*, 76 F. 4th at 749 (internal quotation marks omitted) (quoting *Robers*, 698 F.3d at 943). Because a victim is entitled to "just a single recovery," "Section 3664(j)(2) covers 'compensatory damages', which reduce the amount the wrongdoer pays in restitution." *Johnson*, 911 F. 3d at 852. To hold otherwise would be to allow victims to recover more than "the amount of loss *actually caused* by the defendant's offense." *United States v. Rhodes,* 330 F.3d 949, 953 (7th Cir. 2003) (emphasis in original) (citation omitted). In effect, this would result in "an order of restitution that exceeds the victim's actual losses or damages," which amounts to "an illegal sentence." *Wolf,* 90 F.3d at 194 n. 2 (citing *Braslawsky*, 951 F. 2d at 151).

## CONCLUSION

For all the reasons discussed above, Mr. Sannikov respectfully asks this Court to reduce his order of restitution by $272,000. Mr. Melamed's should be

reduced $256,000 and Mr. Will's by an additional $16,000 (the government agrees to the $49,250 paid to Mr. Will for a commission assignment).

Consequently, it is respectfully requested that restitution be order accordingly.

| | |
|---|---|
| McNaughton | $ 90,000 |
| Stuart | $ 105,395 |
| Will | $ 125,341 |
| Melamed | $ 1,606,481 |
| Total: | $1,927,217 |

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: *Mary H. Judge*
Mary H. Judge
Attorney for Stanislav Sannikov

Mary H. Judge
Federal Defender Program
55 E. Monroe Street, Suite 2800
Chicago, IL 60603
(312) 621-8336